**GEORGE FISCHER FOUNDRY SYSTEMS, INC., Plaintiff–Appellant,**

v.

**ADOLPH H. HOTTINGER MASCHINENBAU GmbH, Defendant–Appellee.**

No. 94–1321.

United States Court of Appeals, Sixth Circuit.

Argued March 8, 1995.

Decided June 7, 1995.

Pierre A. Dahmani (argued and briefed), R. Dennis Claessens, Thomas I. Ross, Hill, Steadman & Simpson, Chicago, IL, for plaintiff-appellant.

William H. Levit, Jr. (argued and briefed), Howard A. Pollack, David G. Peterson, Godfrey & Kahn, Milwaukee, WI, Ellen Dennis, Butzel Long, Ann Arbor, MI, for defendant-appellee.

Before: MILBURN, RYAN, and GODBOLD,* Circuit Judges.

RYAN, Circuit Judge.

The plaintiff, George Fischer Foundry Systems, Inc., appeals the order of the district court dismissing his claim without prejudice in this antitrust action against a German corporation. We are asked to determine: (1) whether the district court erred in dismissing the plaintiff's complaint when arbitration proceedings have begun in Switzerland before a Swiss arbitration panel that has not yet determined whether United States antitrust law will apply; and (2) whether this court should declare the standard of review that will apply in the event the plaintiff seeks review of the final decision of the arbitration tribunal in American federal courts. We conclude that the district court did not err and, therefore, affirm the judgment of the district court.

## I.

The plaintiff, George Fischer Foundry Systems, Inc., is a Michigan corporation and a subsidiary of a Swiss company. In 1987, Fischer entered into a license agreement with Adolph H. Hottinger Maschinenbau GmbH, a German corporation. The agreement provided that Fischer would become the exclusive manufacturer and seller of Hottinger core machines in North America and that Fischer would gradually cease manufacturing and marketing its own core machines.

After several years, Fischer decided that it could not successfully sell the Hottinger machines. Consequently, Fischer attempted to renegotiate the agreement so that Fischer could continue to sell its own machines. When Hottinger refused to renegotiate, Fischer wrote a letter to Hottinger terminating the agreement on April 16, 1992.

The license agreement contained the following arbitration clause:

This Agreement is subject to and shall be interpreted according to Swiss Law. All disputes arising in connection with the present contract shall be finally settled under the Rules of Conciliation and Arbitration of the Zurich Chamber of Commerce by one or more arbitrators appointed in accordance with said Rules.

The place of arbitration shall be Zurich.

Pursuant to this clause, Hottinger filed an application for arbitration with the Zurich Chamber of Commerce on May 26, 1992, seeking specific performance of the agreement. Fisher's defense to Hottinger's claim is that the portion of the agreement in which Fischer agrees to terminate production and marketing of its own machines violates United States antitrust laws.

On July 20, 1992, Fischer sought a preliminary ruling from the Zurich tribunal as to whether it would apply United States antitrust law. On July 29, 1992, the tribunal declined to issue such a ruling noting that the parties had not yet had an opportunity to address the issue.

On February 10, 1993, Fischer filed an action in the United States District Court for the Eastern District of Michigan against Hottinger alleging violations of antitrust law and seeking a declaration that the parties' arbitration agreement is void to the extent that it applies to the antitrust claims. Hottinger filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

In a March 1993 order refusing Fischer's request to suspend arbitration proceedings, the Zurich tribunal ruled that

it will be for this Tribunal to decide *inter alia* whether U.S. antitrust laws will have (or must) be applied in addition or over and above Swiss law as the *lex voluntatis*, or whether U.S. antitrust laws will (or may) have to be considered in some way or another, as this has already been expressed by this Tribunal in its Second Order of 29 July 1992.

While, therefore, U.S. antitrust issues are *sub judice* in the present arbitral proceedings, it is however not possible nor appropriate for this Tribunal to make an early and isolated determination as to the appli-

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

cability and/or relevance of U.S. antitrust laws in the context of the present dispute unless all issues connected therewith will first have been fully addressed by both Parties.

On March 14, 1994, the district court granted Hottinger's motion to dismiss and dismissed Fischer's claim without prejudice. The district court held that

> there is no question that it would be sheer speculation for this Court to attempt to predict in advance what law the Tribunal will decide to apply to plaintiff's antitrust claims.

> Because the Tribunal has expressly undertaken to decide the issue, it would be premature to find that the arbitration clause has operated as a prospective waiver of plaintiff's rights. This is particularly true since the Convention reserves to each signatory the right to refuse enforcement of an award where the "recognition or enforcement of the award would be contrary to the public policy of that country." Art. V(2)(b), *Mitsubishi [Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 638, 105 S.Ct. 3346, 3359, 87 L.Ed.2d 444 (1985) ].

> ... [T]his Court finds that plaintiff agreed to arbitrate these claims and should be held to that agreement where the Tribunal has yet to determine what law it will apply to plaintiff's antitrust claims and defenses.

On July 7, 1994, the Zurich tribunal issued another order. In that order, the tribunal states:

> [T]he Arbitral Tribunal has once again confirmed that it regards any and all US-antitrust issues as being *sub judice* (i.e. as being validly submitted to the present Arbitral Tribunal for a final adjudication), including the punitive and/or treble damages provisions as may be contained therein. The Tribunal feels that the present cooperative spirit of both Parties which may result in their finding a mutual settlement, should not be impaired by further procedural or other steps in U.S. Courts or before the U.S. Department of Justice.

In this ruling, the tribunal also ordered the parties to agree on a United States antitrust law expert to render an expert opinion to the tribunal. In due course, a United States antitrust law expert was appointed and the expert rendered an opinion to the Zurich arbitration panel regarding the merits of Fischer's antitrust claims.

Following the district court's dismissal of its complaint, Fischer appealed to this court and now urges this court to reverse.

## II.

Fischer's first argument relies solely on a footnote in the United States Supreme Court case of *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Footnote 19 in *Mitsubishi* states, in part:

> [I]n the event the choice-of-forum and choice-of-law clauses [of an Arbitration Agreement] operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.

*Id.* at 637, 105 S.Ct. at 3359.

Fischer argues that the rules which govern the Zurich arbitration proceedings do not allow the tribunal to award treble damages, a remedy which is allowed under United States antitrust law. Consequently, Fischer claims, this prohibition operates as a prospective waiver of its statutory right to treble damages and Fischer should be allowed to pursue its antitrust claims in United States federal courts.

Hottinger responds that, contrary to Fischer's assertions, it is not clear that the Zurich tribunal will not award treble damages. Specifically, Hottinger maintains that the Swiss courts must follow Swiss public policy, but Swiss international arbitral tribunals, applying foreign laws, must observe the restraints of Swiss public policy only when the dispute has substantial territorial or personal connections with Switzerland.

■ Whether the district court properly dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law which this court reviews *de novo.*

*Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253, 258 (6th Cir.1994). "A district court's grant of a motion to dismiss is proper when there is no set of facts that would allow the plaintiff to recover. All factual allegations are deemed true and any ambiguities must be resolved in plaintiff's favor." *Id.*

As we have stated, Fischer relies solely on a footnote in the United States Supreme Court case, *Mitsubishi*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444. The issue in *Mitsubishi* was whether antitrust claims could be arbitrated by a foreign arbitration tribunal. The parties in *Mitsubishi* entered into a contract involving the international distribution of Chrysler automobiles. An arbitration clause in the contract provided that "[a]ll disputes ... shall be finally settled by arbitration in Japan in accordance with the rules and regulations of the Japan Commercial Arbitration Association." *Id.* at 617, 105 S.Ct. at 3349. Disputes arose between the parties due to the slackening sales of new automobiles. When attempts to resolve those disputes failed, Mitsubishi filed suit in federal district court. Soler Chrysler–Plymouth counterclaimed alleging antitrust violations. The district court ordered that all the claims by the parties be arbitrated. *Id.* at 620, 105 S.Ct. at 3350. The Supreme Court reversed the Court of Appeals decision holding that the American dealers' antitrust claims could not be arbitrated in Japan. *Id.* at 640, 105 S.Ct. at 3360–61. The Court held that antitrust claims may be arbitrated in foreign tribunals. *Id.* at 639–40, 105 S.Ct. at 3360–61.

The Court stated:

There is no reason to assume at the outset of the dispute that international arbitration will not provide an adequate mechanism. To be sure, the international arbitral tribunal owes no prior allegiance to the legal norms of particular states; hence, it has no direct obligation to vindicate their statutory dictates. The tribunal, however, is bound to effectuate the intentions of the parties. Where the parties have agreed that the arbitral body is to decide a defined set of claims which includes, as in these cases, those arising from the application of American antitrust law, the tribunal therefore should be bound to decide that dispute in accord with the national law giving rise to the claim.

*Id.* at 636–37, 105 S.Ct. at 3359.

Footnote 19 follows this passage. It is clear from a reading of *all* of footnote 19 that the fragment of the footnote relied upon by Fischer does not support the claim for which Fischer quotes it.

The relevant language of footnote 19 is as follows:

We ... have no occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award. Nor need we consider now the effect of an arbitral tribunal's failure to take cognizance of the statutory cause of action on the claimant's capacity to reinitiate suit in federal court. We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.

*Id.* at 637 n. 19, 105 S.Ct. at 3359 n. 19.

Of the four cases cited at the end of the footnote, one is a decision from this circuit. In *Gaines v. Carrollton Tobacco Board of Trade, Inc.*, 386 F.2d 757 (6th Cir.1967), this court held that if an agreement is executed to waive damages arising from future violations of antitrust laws, the agreement would be invalid on public policy grounds. *Id.* at 759.

The text of *Mitsubishi*, following the footnote, continues with:

And so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.

*Having permitted the arbitration to go forward, the national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the antitrust law has been addressed.* The Convention reserves to each signatory

country the right to refuse enforcement of an award where the "recognition or enforcement of the award would be contrary to the public policy of that country."

473 U.S. at 637–38, 105 S.Ct. at 3359 (emphasis added) (citation omitted).

Footnote 19 and the cases cited therein stand for the proposition that if any part of a contract, including a choice-of-law provision, waives a party's right to collect damages for antitrust violations, the provision is void for public policy reasons. We do not have such a case here because it is not clear what law the Zurich tribunal will apply.

■ Contrary to Fischer's contention, *Mitsubishi* stands for the proposition that arbitration should go forward even if there is a chance that United States antitrust statutory rights will not be fully recognized, because, should that occur, the aggrieved litigant may request a federal court, at the *award-enforcement stage,* to determine whether the arbitration award violates public policy. Here, because the Zurich tribunal has yet to decide what law it will apply, this case is not ripe for review. Regarding the constitutional requirement that a case must be ripe for decision in order for a federal court to render an opinion, this court has stated:

> "The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions." "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."

*Bigelow v. Michigan Dep't of Natural Resources,* 970 F.2d 154, 157 (6th Cir.1992) (citations omitted). This is just such a claim.

### III.

Fischer also asks that we announce a new standard of review for lower courts to follow in foreign arbitration antitrust cases. Fischer contends that the current standard is too deferential to arbitration tribunals. The plaintiff urges this court to direct the lower court to apply a *de novo* standard of review.

■ The Supreme Court in *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), explained, in the following manner, the requirement that a federal court may only address a litigant's claim when there is an actual case or controversy in existence:

> The exercise of judicial power under Art III of the Constitution depends on the existence of a case or controversy. As the Court noted in North Carolina v Rice, 404 U.S. 244, 246 ... (1971), a federal court has neither the power to render advisory opinions nor "to decide questions that cannot affect the rights of litigants in the case before them." Its judgments must resolve " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' "

*Id.* at 401, 95 S.Ct. at 2334 (citations omitted).

Fischer is asking for precisely what the Supreme Court and Article III of the Constitution forbid: an opinion advising what the law would be upon a hypothetical state of facts. Specifically, the plaintiff asks this court to devise a standard of review that would govern the case if and when the Zurich tribunal ruled that it would not allow the plaintiff to recover the United States statutory remedy of treble damages and the plaintiff returned to the federal courts to challenge that ruling. This court is forbidden to comply with Fischer's request.

Therefore, the judgment of the district court is AFFIRMED.