In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1036

KEVIN D. WICKSTROM, *et al.*,

*Plaintiffs-Appellants*,

*v.*

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 23 C 2631 — **Matthew F. Kennelly**, *Judge*.

ARGUED SEPTEMBER 9, 2025 — DECIDED OCTOBER 8, 2025

Before ST. EVE, LEE, and KOLAR, *Circuit Judges*.

ST. EVE, *Circuit Judge*. United Airlines terminated the plaintiffs pursuant to its newly adopted COVID-19 vaccine mandate. The plaintiffs then sued their labor union, the Air Line Pilots Association ("ALPA"), alleging that it breached its duty of fair representation by insufficiently opposing United's vaccination policies. The district court granted ALPA's motion to dismiss and then denied leave to amend as futile. We affirm.

## I. Background

### A. United and ALPA's Internal Grievance Procedures

Because much of the dispute here concerns how ALPA acted (or did not act) with respect to pilot grievances, we begin with a brief summary of the scheme governing internal grievances between United and ALPA.[1] As relevant here, the United Pilot Agreement ("UPA")—ALPA and United's collective bargaining agreement—provides for three types of grievances: nondisciplinary pilot grievances, Master Executive Council ("MEC") grievances, and termination grievances.

Nondisciplinary pilot grievances permit United pilots to challenge the airline's conduct, except as it pertains to discipline or discharge. United's Chief Pilot initially decides such grievances, which pilots may appeal to a more senior United official. If that official also decides against the pilot, only ALPA may take a further appeal. That appeal lies with the System Board of Adjustment (the "Board"), the UPA's arbitral body. If ALPA elects not to appeal the pilot's grievance to the Board, however, the pilot may contest that decision before the Grievance Review Panel ("GRP"), which may order the grievance advanced to the Board.

Next consider MEC grievances. Under the UPA, ALPA's MEC can request that United review "an alleged

---

[1] We draw this background from the proposed amended complaint and accept as true the well-pleaded facts. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). Like the district court, we also—without protest from the plaintiffs—consider documents referred to in and critical to the complaint. *See Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498 (7th Cir. 2025).

misapplication or misinterpretation of" the UPA. ALPA may appeal an unsatisfactory decision to the Board.

Last are termination grievances. United may terminate pilots only for "just cause," and the UPA establishes a process to challenge terminations as unjustified.

## B. Factual Background

In May 2020, ALPA warned its United pilots that the airline may attempt to unilaterally alter the UPA in response to the COVID-19 pandemic. ALPA called for a united front to prevent such changes. In January 2021, however, after United indicated that it might eventually implement a vaccine mandate, ALPA claimed the UPA permitted this action.

Then, in May 2021, United and ALPA adopted Letter of Agreement ("LOA") 21-02. Instead of mandating the vaccine, LOA 21-02 financially incentivized inoculation and restricted certain destinations to vaccinated pilots.

But on August 6, 2021, United notified ALPA that it intended to terminate LOA 21-02 and instead implement a vaccination mandate, effective September 27, 2021. ALPA did not take action to oppose the vaccine mandate, but on August 24, 2021, several United pilots, including at least some of the plaintiffs here, filed nondisciplinary grievances. These grievances argued in part that United breached its status quo obligation under the Railway Labor Act ("RLA"). That obligation requires parties to a lapsed collective bargaining agreement to continue following the terms of the agreement until a new one is reached. Because the UPA had expired, the pilots argued that United's imposition of the vaccine mandate constituted a status quo violation under the UPA.

ALPA did not assist with these grievances, which United's Chief Pilot denied, nor did ALPA file its own grievance to challenge the alleged status quo violation. After United denied the pilots' appeal, they asked the GRP to advance their grievance to the Board. The GRP held a two-day hearing, after which it denied the pilots' request as "baseless," reasoning that UPA § 21-K permits United to unilaterally alter personnel policies.

While ALPA did not support the status quo grievances, it was not idle. The day after the vaccine mandate went into effect, ALPA opted to file an MEC grievance, taking the position that United violated the UPA by terminating the unvaccinated pilots because, as ALPA argued, unvaccinated status was merely a "pilot qualification" issue, which was not grounds for termination. The Board denied the grievance.

Following the plaintiffs' terminations, ALPA filed termination grievances on their behalf. Those grievances remain pending at the plaintiffs' request.

## C. Procedural History

After United terminated them, the plaintiffs sued ALPA for breach of the duty of fair representation. ALPA moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing the plaintiffs' complaint was unripe and failed to state a claim, respectively. The district court denied the Rule 12(b)(1) motion but granted the Rule 12(b)(6) motion. The court then denied the plaintiffs' request to file an amended complaint as futile, holding that it would also fail to state a claim. This appeal followed.

## II. Discussion

### A. Ripeness

We begin with jurisdiction, reviewing de novo the district court's determination that this case is ripe. *See Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019).

Under Article III of the Constitution, only cases and controversies are justiciable. *See* U.S. Const. art. III, § 2. One dimension of justiciability is ripeness, which "is peculiarly a question of timing." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974); *see Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021). As such, the "doctrine's underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements." *Church of Our Lord*, 913 F.3d at 676. And the doctrine achieves that goal by deeming a claim unripe "when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 664 (7th Cir. 2021) (quoting *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008)). Put another way, a case is ripe if it is "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

ALPA contends that the plaintiffs' claim is unripe because of the pending termination grievances, which, if successful, could reinstate and grant backpay to the plaintiffs, thereby mooting this dispute. But of the many cases ALPA cites to establish this theory, none does the trick. Each instead suffers from a common flaw: In the cited cases, the plaintiffs' alleged

harm had not yet come to pass, whereas here, the plaintiffs' alleged harm (termination) has occurred.

Take, for example, *George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206 (6th Cir. 1995). There, the plaintiff alleged that a foreign arbitration proceeding might not recognize his U.S. statutory antitrust rights, which would harm him by denying him treble damages. *Id.* at 1208. But the foreign arbitrator was yet to decide what jurisdiction's law would apply, so it remained unclear whether the plaintiff would face any harm. *Id.* at 1210.

*Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466 (7th Cir. 2007), another case upon which ALPA relies, suffers the same problem. The plaintiff in *Jennings* had a patent application pending before the Patent and Trademark Office. He brought state law claims against the defendant for misleading the Office into believing that he had not invented the product underlying his application. *Id.* at 469. But we found the claims unripe because the Office had not yet ruled on the plaintiff's patent application, so it was possible that the plaintiff would never suffer harm. *Id.* at 476–77. The rest of the cases ALPA cites fit the same mold, and thus do not support its argument. *See, e.g.*, *Dolan v. Ass'n of Flight Attendants*, 1996 WL 131729, at *3 (N.D. Ill. Mar. 20, 1996).

In the end, United terminated the plaintiffs and the plaintiffs allege ALPA helped cause that harm by breaching its

duty of fair representation. The parties' dispute is thus concrete, not abstract, and we can proceed to the merits.[2]

## B. Duty of Fair Representation

Where, as here, "a district court denies a motion for leave to amend as futile, our review is de novo, and we ask whether the proposed amended complaint would fail to state a claim." *Anderson v. United Airlines, Inc.*, 140 F.4th 385, 388 (7th Cir. 2025).[3] The proposed amended complaint thus "must allege 'enough facts to state a claim to relief that is plausible on its face' or, in other words, contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 479–80 (7th Cir. 2024) (quoting *Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th

---

[2] In between ALPA's ripeness argument and its duty of fair representation argument, it argues that most of the plaintiffs' claims are time-barred. The plaintiffs' claims are subject to a six-month statute of limitations, *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1270 (7th Cir. 1985), but the statute of limitations is tolled while the plaintiffs pursue internal union remedies, *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 782 F.2d 674, 681 (7th Cir. 1986). Because the statute-of-limitations and tolling questions here concern factual matters not made clear by the pleadings, we do not address them. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

[3] The district court dismissed the original complaint on September 5, 2023, and denied the plaintiffs' request to file an amended complaint on December 11, 2024. The plaintiffs' briefs focus on the latter, mentioning the former only in passing. But, because the de novo standard of review applies to both orders here and the amended complaint only adds allegations to buttress the prior claim, we too will focus on the proposed amended complaint.

437, 447 (7th Cir. 2023)). At this stage, "we accept the well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but we do not presume the truth of legal conclusions and conclusory allegations." *Id.* at 475.

The plaintiffs' complaint asserts just one claim: breach of the duty of fair representation. This duty "arises out of a union's role as the exclusive representative of all employees in a collective bargaining unit," *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020), and it is "akin to the duty owed by other fiduciaries to their beneficiaries," *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991). A union breaches its duty of fair representation if its actions are either (1) arbitrary, (2) discriminatory, or (3) made in bad faith. *Bishop v. Air Line Pilots Ass'n, Int'l* (*Bishop I*), 900 F.3d 388, 397 (7th Cir. 2018). We address each prong in turn.

**1. Arbitrariness**

A union acts arbitrarily "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, 499 U.S. at 67 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). This analysis is, as it sounds, objective. *Bishop v. Air Line Pilots Ass'n Int'l* (*Bishop II*), 5 F.4th 684, 693 (7th Cir. 2021). Put differently, our task is not to play Monday-morning quarterback; "[a]ny substantive examination of a union's performance … must be highly deferential …." *O'Neill*, 499 U.S. at 78.

A few additional principles guide our analysis in the grievance context. "Although a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory

fashion, it has considerable discretion in handling grievances." *Sullers v. Int'l Union Elevator Constructors, Loc. 2*, 141 F.4th 890, 898–99 (7th Cir. 2025) (cleaned up). That discretion recognizes that the union "is not required to pursue all grievances through arbitration" and "may consider all members' interests 'when deciding whether or not to press the claims of an individual employee.'" *Id.* at 899 (quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995)). Accordingly, the union may "act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003).

At bottom, the proposed amended complaint alleges that ALPA insufficiently resisted United's imposition of the COVID-19 vaccine mandate. But we cannot reasonably infer from its allegations that any of ALPA's decisions were arbitrary, i.e., irrational.

The plaintiffs first fault ALPA for not seeking a judicial injunction to prevent United's alleged status quo violation. The RLA's distinction between "major" and "minor" disputes spoils this argument. "Major disputes arise over the creation of contractual rights, while minor disputes concern the interpretation or application of already existing agreements." *Int'l Bhd. of Teamsters v. Republic Airways Inc.*, 127 F.4th 688, 693 (7th Cir. 2025). The terms "major" and "minor" are thus "terms of art," not reflections of "the size or significance of a dispute." *Id.* Critically, "[f]ederal courts only have jurisdiction to hear major disputes; minor disputes are resolved in arbitration." *Id.* at 693–94. And the bar for deeming a dispute minor is low; an employer's position need only be "arguably justified by the terms of the parties' agreement (i.e., the claim is neither

obviously insubstantial or frivolous, nor made in bad faith) ....” *Consol. Rail Corp. v. Ry. Labor Execs.’ Ass’n*, 491 U.S. 299, 310 (1989). All of this means “there is a large thumb on the scale in favor of minor, and hence arbitration.” *Bhd. of Locomotive Eng’rs & Trainmen (Gen. Comm. of Adjustment, Cent. Region) v. Union Pac. R.R.*, 879 F.3d 754, 758 (7th Cir. 2017).

ALPA did not act arbitrarily, as the complaint alleges, in declining to seek a judicial injunction because its conclusion that such a lawsuit would have presented a minor dispute was not irrational. As ALPA notes, UPA § 21-K, which authorizes United to modify employee personnel policies, at least arguably justified United’s imposition of the vaccine mandate. In their opening brief, the plaintiffs contend that this dispute was major because of its high stakes, but this approach misunderstands that “[w]hether a dispute is major or minor in no way relates to a court’s estimation of the dispute’s relative importance.” *BLET GCA UP v. Union Pac. R.R.*, 988 F.3d 409, 412 (7th Cir. 2021). The plaintiffs try a different approach in their reply brief, by which point it is too late. *See Int’l Ass’n of Fire Fighters, Loc. 365 v. City of East Chicago*, 56 F.4th 437, 452 (7th Cir. 2022) (finding waiver in this circumstance).

Next, the plaintiffs challenge ALPA’s decisions with respect to grievances. Specifically, the plaintiffs take issue with ALPA’s choices not to support their status quo grievances, advance them to the Board, or file its own such grievance. But throughout the proceedings, ALPA has maintained that each of these decisions shares a common justification: UPA § 21-K. This provision, on ALPA’s view, permitted United to unilaterally institute the vaccine mandate, and the plaintiffs have failed to timely engage with that argument. As the district court held, the plaintiffs forfeited the issue by failing to

respond to ALPA's § 21-K argument. And in their opening brief, the plaintiffs did not address this conclusion or otherwise contest ALPA's reading of § 21-K. While they do so in their reply brief, by that point, they had already waived the argument. *See id.* We thus have no basis to reasonably infer that ALPA acted irrationally.

Nor have the plaintiffs plausibly alleged that ALPA addressed their grievances in a perfunctory fashion. In declining to advance the plaintiffs' status quo grievances to the Board, the GRP conducted a two-day hearing in which the grievants had hours to present their case. The GRP ultimately concluded that a status quo claim would be "baseless" because of UPA § 21-K. Moreover, ALPA did not stand idle in response to United's policies: it filed an MEC grievance taking the position that, notwithstanding the permissibility of the vaccine mandate, United lacked just cause to terminate unvaccinated pilots. The plaintiffs point to no caselaw suggesting that, under these circumstances, ALPA transgressed the bounds of a union's "'considerable discretion' in handling grievances." *Sullers*, 141 F.4th at 898–99 (quoting *Garcia*, 58 F.3d at 1176); *see also Neal*, 349 F.3d at 369.

**2. Discrimination**

The second way in which a union may breach its duty of fair representation is through discrimination. Unlike with arbitrariness, whether a union discriminated "calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive." *Bishop II*, 5 F.4th at 694 (quoting *Neal*, 349 F.3d at 369). Recognizing "the union's concurrent obligations to its collective membership and to the individual members," we have also explained that "discriminatory *impact*" is not in itself sufficient. *Bishop I*, 900 F.3d at 398.

Further, to rise to the level of a duty of fair representation breach, "discriminatory conduct must be 'intentional, severe, and unrelated to legitimate union objectives.'" *Bishop II*, 5 F.4th at 694 (quoting *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of. Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).

On appeal, the plaintiffs' cursory argument for discrimination is predicated on LOA 21-02, the policy that financially incentivized vaccination and restricted certain destinations to vaccinated pilots. But, conclusory assertions aside, none of the complaint's factual allegations permit the inference that ALPA adopted LOA 21-02 with the subjective intent to discriminate against unvaccinated pilots. "The mere fact that plaintiffs [are] a minority group within their union organization and that they were adversely affected by the actions of the union [does] not establish that the union acted with hostile or discriminatory intent." *Id.* Because the plaintiffs lack more, they failed to plausibly allege discrimination.

### 3. Bad Faith

Finally, the plaintiffs attempt to make out their duty of fair representation theory under the bad faith prong. As with claims of discrimination, claims of bad faith call for a "subjective inquiry" and require that the union had "an improper motive." *Id.* (quoting *Neal*, 349 F.3d at 369). Further, "a plaintiff must support an allegation of bad faith with 'subsidiary facts,' not just '[b]are assertions of the state of mind.'" *Bishop I*, 900 F.3d at 397 (alteration in original) (quoting *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013)); *see also Taha*, 947 F.3d at 472.

Here again, the plaintiffs fail to allege bad faith. The proposed amended complaint repeatedly asserts that ALPA and United "colluded" to implement the vaccine mandate, but we need not accept as true such a conclusory label, and no well-pleaded factual allegations support it. The plaintiffs also allege that ALPA permitted United to implement the vaccine mandate to keep federal funding flowing to United. The complaint acknowledges, however, that such funding was conditioned on not laying off or furloughing pilots. We fail to see how a union acts in bad faith by seeking to protect its members from layoffs or pay cuts.

The final basis for ALPA's alleged bad faith is that it switched positions on the permissibility of a vaccine mandate. Recall that in May 2020, ALPA warned its United members that the airline might unilaterally alter the UPA in response to the pandemic. Then, in January 2021, ALPA claimed that United was contractually permitted to mandate vaccination. The plaintiffs' argument, however, cannot overcome two hurdles. First, it is unclear that ALPA switched positions at all, as the May 2020 communication was not specifically related to vaccines. In other words, the plaintiffs' argument that ALPA changed positions implicitly relies on the premise that imposing the vaccination mandate was the kind of unilateral change referred to in May 2020, but ALPA's argument regarding UPA § 21-K calls into question that premise. Second, even assuming ALPA changed its position over those eight months, the complaint provides no basis for inferring that the union did so for an improper motive—such as "*solely* for the benefit of a stronger, more politically favored group over a minority group," *Barton Brands, Ltd. v. NLRB*, 529 F.2d 793, 798–99 (7th

Cir. 1976)—without which there can be no bad faith.

*       *       *

The judgment of the district court is

AFFIRMED.