# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Merrilees v. Merrilees*, 2013 IL App (1st) 121897

---

| | |
|---|---|
| Appellate Court Caption | PAMELA MERRILEES, Plaintiff-Appellant, v. ROBERT MERRILEES, JAMES RUBENS, DAVIS FRIEDMAN, LLP, DONALD CASEY, MATTHEW CASEY, SPRINGER, CASEY & DIENSTAG, P.C., STUART LITWIN, and GARY DIENSTAG, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-1897 |
| Filed | September 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the dissolution of plaintiff's marriage to defendant, the trial court properly dismissed with prejudice plaintiff's amended complaint for civil violations of the Racketeer Influenced and Corrupt Organizations Act, fraud, civil conspiracy, and legal malpractice based on the conduct of her former husband, his attorneys, her attorneys and her ex-fiancé in connection with the settlement of the dissolution action, since plaintiff failed to sufficiently plead any of the causes of action she alleged. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-50345; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Law Office of Nishay K. Sanan (Nishay K. Sanan, of counsel) and Thompson Coburn LLP (J. David Duffy, Susan M. Lorenc, and Brittany E. Kirk, of counsel), both of Chicago, for appellant. |
| --- | --- |
| | Much Shelist, P.C., of Chicago (Warren Lupel and Jonathan L. Loew, of counsel), for appellees Robert Merrilees, James Rubens, and Davis Friedman, LLP. |
| | Hinshaw & Culbertson LLP, of Chicago (Stephen R. Swofford, Thomas P. McGarry, and Terrence P. McAvoy, of counsel), for appellees Donald Casey, Gary Dienstag, and Springer, Casey & Dienstag, P.C. |
| | Kralovec Meenan, LLP, of Chicago (Daniel C. Meenan, Jr., of counsel), for appellee Stuart Litwin. |
| | Erin S. Sander, of Morton Grove, for appellee Matthew Casey. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion. |

## OPINION

¶ 1  After reaching a negotiated settlement with her ex-husband in their dissolution of marriage case, plaintiff Pamela Merrilees sued her former attorneys, her ex-husband, her ex-husband's attorneys, and her ex-fiancé for alleged damages arising out of the settlement of that case. After the trial court gave plaintiff five chances to state a cause of action against any of the defendants, the trial court, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)), dismissed with prejudice plaintiff's fourth amended complaint.

¶ 2  Plaintiff appeals the dismissal of her complaint, contending she has pled factually and legally sufficient claims of civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962 (2006)), fraud, civil conspiracy, and legal malpractice against the defendants.

¶ 3  For the reasons that follow, we affirm the judgment of the trial court.

¶ 4                    I. BACKGROUND

¶ 5  Plaintiff and defendant Robert Merrilees were married in 1993 and had three children.

In 1999, Robert formed Spot Trading, LLC (Spot). In 2005, plaintiff filed a petition for dissolution of marriage. During the parties' negotiations concerning their marital settlement agreement (MSA), Robert argued that Spot constituted nonmarital property because his investment in Spot was traceable back to his premarital property, his share of the current book value of Spot grew out of his nonmarital stake in Spot without the addition by Robert of further contributions, and the marital estate was more than adequately compensated for his marital work by distributions to Robert from Spot and its predecessors.

¶ 6        In February 2009, plaintiff and Robert executed an MSA that allocated to plaintiff $18 million and the marital home valued at more than $1 million tax free. In the MSA, plaintiff and Robert stipulated that they had disputed the value of Spot, but plaintiff was advised by her own expert concerning that expert's opinion of the value of Spot, and she was satisfied with the valuation she received. The MSA allocated Spot to Robert, and plaintiff disclaimed any interest she had in the firm in exchange for the $18 million cash payment. After plaintiff gave sworn testimony at the prove-up hearing, the trial court approved the terms of the MSA and incorporated the MSA into a judgment for dissolution of marriage. Robert had sought sole custody of the children but, in April 2009, plaintiff and Robert executed a joint parenting agreement that provided for joint custody.

¶ 7        In June 2009, plaintiff reached a settlement agreement with some of her divorce attorneys, *i.e.*, Litwin, Dienstag, and Dienstag's firm, concerning their legal fees in the divorce proceeding. The parties agreed to readjust the total sum of attorney fees from $3 million to $1.5 million. Plaintiff released and discharged Litwin, Donald Casey, Dienstag, and Springer, Casey & Dienstag, P.C., from all claims and damages of whatever nature or kind to date arising out of or in any way connected to the attorneys' compensation for legal fees and costs in connection with the representation of plaintiff in the divorce proceedings, including, but not limited to, claims for negligence or wrongdoing of any kind, misconduct related to the attorneys' compensation, or claims for refunds of money previously paid by plaintiff, who had not yet asserted any claim of professional negligence against the attorneys arising out of their legal services performed in the divorce proceedings.

¶ 8        In January 2010, plaintiff filed a petition to vacate the judgment for dissolution and the MSA pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2008)). Plaintiff alleged that her attorneys, her ex-fiancé, her ex-husband and his attorneys colluded to get her to sign the MSA and joint parenting agreement in order to enrich themselves, deprive plaintiff of her equitable share in the marital estate, and exclude her from the lives of her children. Specifically, she alleged that the defendants engaged in deception and fraud by understating the value of Spot and falsely informing her that Spot was nonmarital property. Robert's motions to dismiss plaintiff's section 2-1401 petition were granted, but the trial court granted plaintiff leave to amend. In December 2010, the trial court granted plaintiff's motion for a voluntary dismissal of her section 2-1401 petition, without prejudice.

¶ 9        Meanwhile, in February 2010, plaintiff filed the case at issue in this appeal against defendants: plaintiff's former divorce attorneys Donald Casey, Gary Dienstag, Springer, Casey & Dienstag, P.C., and Stuart Litwin; her ex-husband Robert and his attorneys James Rubens and Davis Friedman, LLP; and her ex-fiancé Matthew Casey. Defendants' section 2-615 motions to dismiss for insufficient pleading were granted, but the trial court gave

plaintiff four opportunities to amend her original complaint. In March 2012, plaintiff filed against the defendants a 10-count fourth amended complaint seeking damages arising out of the handling of her divorce. She alleged the defendants conspired together to defraud her out of a higher divorce settlement and her attorneys' negligence caused her to receive a lower divorce settlement.

¶ 10        Specifically, plaintiff alleged civil RICO violations against all defendants (counts I and II); fraud in the inducement against Robert, Rubens and Davis Friedman, LLP (count III); fraud in the inducement against Litwin, Donald Casey, Dienstag and Springer, Casey & Dienstag, P.C. (count IV); fraud against Matthew and Donald Casey (count V); conspiracy against all defendants (count VI), and legal malpractice against Litwin, Dienstag, Donald Casey and Springer, Casey & Dienstag, P.C. (counts VII through X). The fourth amended complaint alleged the defendants knew that the statements in Robert's asset list and other documents were false, but defendants used them to defraud plaintiff and induce her to accept the MSA. She alleged that her own lawyers asked Robert's lawyers to prepare documents which indicated that Spot was not marital property and that she was not entitled to any proceeds from Spot.

¶ 11        Defendants filed separate but similar section 2-615 motions to dismiss, contending that plaintiff failed to add any factual allegations to her fourth amended complaint and, thus, failed to correct any deficiencies in her prior pleadings. They argued that the fourth amended complaint continued to fail to properly allege the claims for RICO violations, fraud, civil conspiracy, and legal malpractice. In addition, several defendants argued the pleading was still in violation of section 2-603 of the Code (735 ILCS 5/2-603 (West 2010)) by improperly commingling causes of action.

¶ 12        In June 2012, the trial court found that plaintiff partially cured the defects of her prior complaint concerning the improper commingling of causes of action. However, counts II and X were still subject to dismissal on the basis of section 2-603 because count II realleged all of count I, and count X realleged all of counts VIII and IX. Notwithstanding this partial cure of the commingling defects, the trial court found the 48-page, 242-paragraph, 13-exhibit fourth amended complaint was still conclusory and wholly lacking in the specific, relevant and factual detail necessary to state a cause of action in each and every count. Accordingly, the trial court granted defendants' section 2-615 motions to dismiss with prejudice. Plaintiff timely appealed.

¶ 13                                   II. ANALYSIS

¶ 14        We review *de novo* a trial court's decision granting or denying a section 2-615 motion to dismiss. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In reviewing the sufficiency of a complaint to state a cause of action, all well-pleaded facts and reasonable inferences that may be drawn from those facts are accepted as true. *Davis v. Temple*, 284 Ill. App. 3d 983, 989 (1996). Furthermore, reviewing courts construe the allegations in the complaint in the light most favorable to the plaintiff. *Marshall*, 222 Ill. 2d at 429. A motion to dismiss a complaint for failure to state a cause of action should not be granted unless it clearly appears that no set of facts could be proved that would entitle the plaintiff to recovery.

*Id.* Although a plaintiff is not required to set forth evidence in the complaint, the plaintiff must allege facts–not simply conclusions–sufficient to bring a claim within a legally recognized cause of action. *Id.* at 429-30; *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991) (conclusions of law or fact contained in the pleadings will not be taken as true unless supported by specific factual allegations).

¶ 15    Fraud-based claims require an especially "high standard of specificity"; there must be "specific allegations of facts from which fraud is the necessary or probable inference." *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 803-04 (2005). "[A] plaintiff must at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 457 (1989).

¶ 16                              A. RICO Violations

¶ 17    Counts I and II alleged that defendants conspired with each other to violate and did, in fact, violate RICO by engaging in a scheme to swindle plaintiff out of her rightful share of the marital estate through alleged misrepresentations as to the value of the marital estate. On appeal, plaintiff claims that defendants violated section 1962(d) of RICO, which makes it "unlawful for any person to conspire to violate" RICO. 18 U.S.C. § 1962(d) (2006). The RICO provision defendants allegedly conspired to violate was section 1962(c), which prohibits a person "employed by or associated with any enterprise" from conducting or participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c).

¶ 18    Congress enacted RICO "in an attempt to eradicate organized, long-term criminal activity." (Internal quotation marks omitted.) *Zinser v. Rose*, 245 Ill. App. 3d 881, 885 (1993). RICO was "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007).

¶ 19    "In order to assert a civil claim for violations of [section 1962(c) of] the RICO Act, a plaintiff must allege that (1) the defendants participated in the operation or management (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 351-52 (2000). It is not sufficient for plaintiff simply to allege the above elements in boilerplate fashion; she must allege sufficient facts to support each element. *Goren v. New Vision International, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). "An 'enterprise' is an entity composed of a group of persons associated together for a common purpose," and it "must be an ongoing entity or association that is distinct from the alleged pattern of racketeering activity." *Rodgers*, 315 Ill. App. 3d at 352. Furthermore, "[c]ourts carefully scrutinize the pattern requirement to 'forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law.' " *Jennings*, 495 F.3d at 472-73 (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992)). A pattern of racketeering activity requires at least two predicate acts of racketeering committed within a

10-year period. 18 U.S.C. § 1961(5) (2006).

¶ 20    Predicate acts alone, however, do not make a pattern; in order to establish a RICO pattern, "it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." (Emphasis in original.) *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). Continuity can be "both a closed-and open-ended concept." *Id.* at 241. "Closed-ended continuity *** refers to criminal behavior that has come to a close but endured for such a substantial period of time that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future." (Internal quotation marks omitted.) *Jennings*, 495 F.3d at 473. Open-ended continuity refers to a course of criminal activity that lacks the duration and repetition to establish continuity but where the past conduct by its nature projects into the future with a threat of repetition. *Id.*

¶ 21    Upon careful review of the allegations contained in plaintiff's complaint, we find that she failed to allege with specificity facts indicating the predicate acts of racketeering, a pattern of racketeering activity, and a criminal enterprise. Her RICO claims depended on alleged predicate acts of mail and wire fraud, but she did not specify what misrepresentations were made, when they were made, who made the representations and to whom they were made. She did not identify any mailing in her complaint, and concerning wire communication, she alleged merely that defendants had "telephonic wire communications with one another."

¶ 22    Furthermore, plaintiff did not allege a pattern of racketeering activity because the predicate acts did not demonstrate either closed-ended or open-ended continuity. There was no open-ended continuity because plaintiff's allegations concerned inherently discrete and finite predicate acts that occurred exclusively during a marital settlement negotiated between January and April 2009 and, thus, the acts did not project any future threat of repetition. There was no closed-ended continuity because schemes with a natural ending point, like a property settlement in a divorce case, lack sufficient closed-ended continuity to support a RICO claim. See *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 779-80 (7th Cir. 1994) (schemes of less than nine months that threaten no future criminal conduct do not satisfy closed-ended continuity). Plaintiff's allegations concerning the wiring of settlement funds and unidentified mailings and wire communications relating to the MSA fail to plead the continuity required for the pattern element of a RICO cause of action. Even if plaintiff's allegations of multiple telephone calls and wire transfers had been well pled, they would establish at most one unitary scheme to cause one injury to one victim over a finite, compressed period of time.

¶ 23    In addition, plaintiff failed to sufficiently allege a criminal enterprise where she claimed that the defendants, 9 Cook County judges, 10 law firms, and many lawyers, all with the "common goal" of "the equitable settlement of the divorce proceeding" constituted a "Divorce Enterprise" that "continues to this day and is characterized by the structure of the court proceeding and its adversarial nature." Plaintiff cites no relevant authority to support the proposition that an association of individuals and law firms involved in a lawsuit may constitute a RICO enterprise. Here, the alleged enterprise–judges, lawyers, law firms, and divorce litigants–had no ongoing organization and there was no coherent overarching structure where those actors all interacted to achieve a shared purpose; they did not operate

as a continuing unit or associate over a sufficient length of time.

¶ 24    In order to allege a RICO conspiracy under section 1962(d), plaintiff needed to include specific facts that (1) each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *Goren v. New Vision International, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). A defendant "who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise." *Id.*

¶ 25    Plaintiff did not allege facts showing an agreement by each of the defendants that at least one of them would commit acts constituting a pattern of racketeering activity or that they consented to be part of an enterprise. Her conclusory allegations, claiming an agreement among the defendants without distinguishing the specific conduct or statements of each defendant indicating his consent to participate in an illegal venture, falls short of what is required to survive a motion to dismiss. *Goren*, 156 F.3d at 733.

¶ 26    Accordingly, we affirm the trial court's dismissal with prejudice of plaintiff's RICO claims in counts I and II of the complaint.

## B. Fraud

¶ 28    The trial court dismissed counts III, IV and V, which alleged fraud in the inducement against plaintiff's attorneys and Robert and his attorneys, and fraud against Matthew and Donald Casey. The trial court ruled that plaintiff failed to sufficiently allege a fraud cause of action because she failed to plead specific and relevant facts that showed defendants made a known false statement of material fact which was intended to induce her to act and that she acted in reliance on defendants' representations to her damage. We affirm the trial court's ruling.

## 1. Count III

¶ 30    "Fraudulent inducement is a form of common-law fraud." *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17 (1995). The high specificity standard applies: there must be "specific allegations of facts from which fraud is the necessary or probable inference." *Chatham*, 356 Ill. App. 3d at 803-04. Plaintiff must plead specific facts establishing: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent to induce plaintiff's reliance on the statement; (4) plaintiff's reasonable reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Lagen*, 274 Ill. App. 3d at 17. An opinion is not a false statement of material fact and does not support an action for fraud. *Id.*

¶ 31    Plaintiff alleged in count III that Robert and his attorneys knowingly misrepresented the value and nonmarital nature of Spot by giving her lawyers three false documents, *i.e.*, an

asset list, a January 2009 memorandum, and a flow chart, in an effort to induce her to sign the MSA. However, her conclusory characterization of those documents as false lacks any factual support and is belied by the documents themselves. Those documents were expressions of opinion and were given to support Robert's positions during settlement negotiations in the divorce case. Moreover, plaintiff has not sufficiently pled that she relied on those valuations where she acknowledged that she had retained her own financial expert and counsel to assess the value and nonmarital nature of Spot. Furthermore, plaintiff's reference to Robert's later report to the Securities Exchange Commission is unavailing; that was a formal audited report, which, unlike the asset list, reflected the total, unadjusted book value of Robert's interest in Spot. Robert and his attorneys expressly informed plaintiff in the complained-of documents that (1) the stated value of Robert's interest in Spot was a discounted value, which began with its year-end book value less yet-to-be-determined taxes, deductions and discounts, (2) the analysis of the nonmarital tracing was not complete, and (3) the information was subject to change because the investigation was continuing. We conclude that the trial court correctly dismissed plaintiff's count III because she did not identify any misstatements of material fact on which she reasonably relied.

¶ 32                                            2. Count IV

¶ 33      Plaintiff alleged in count IV that her attorneys, Litwin, Donald Casey, Dienstag and the firm of Springer, Casey & Dienstag, P.C., knew that the complained-of documents made by Robert's attorneys were false, misrepresented to plaintiff the value and nature of the marital estate, and misrepresented to plaintiff that she would receive nothing in the divorce action if she refused to sign the MSA. Plaintiff also alleged that her attorneys misrepresented that Robert "would be paying for their attorneys' fees," that plaintiff "would gain custody of her children," and "that $2.5 million was for their fees."

¶ 34      We conclude that count IV, like count III as discussed above, fails to sufficiently allege fraud because plaintiff's conclusory allegations do not identify misstatements of material fact on which she reasonably relied. Plaintiff merely characterizes the valuation opinions in the complained-of documents as false statements. Moreover, any representations to plaintiff by her attorneys about whether property was marital or nonmarital was a legal opinion, not a fact, and thus was not actionable as fraud. *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 723 (2008). Furthermore, plaintiff's assertions that her attorneys misrepresented that she had to settle, that Robert would pay her attorney fees, and that she would get custody of the children lack the facts of who, what, where or how as to each defendant and fail to show how any such statement was false or known to be false by defendants or made with the intent to deceive. The MSA informed the parties that they were responsible for their own attorney fees and specifically provided that the issue of custody was "reserved" for later. We conclude that the trial court correctly dismissed plaintiff's count IV because she did not plead with sufficient facts the misstatements of material fact on which she reasonably relied.

¶ 35                                    3. Count V

¶ 36        In order to sufficiently plead her claim of fraud against attorney Donald Casey and his son Matthew Casey, who was plaintiff's ex-fiancé, plaintiff had to allege specific facts showing that Matthew and Donald Casey made to her statements of material fact that were not promises or opinions; Matthew and Donald knew or believed that their statements were false; plaintiff had a right to rely or was justified in relying on those statements; and Matthew and Donald made the false and material representations for the purpose of causing plaintiff to act or rely on them. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309 (2002).

¶ 37        Plaintiff alleged in count V that Donald and Matthew Casey committed fraud and deprived her of $700,000 by deceiving her into believing that there would be repercussions with her child custody matters. Plaintiff alleged that, about February 2009, she signed a document that allowed her attorney, Litwin, to allocate $2.5 million in legal fees as he saw fit. Accordingly, Litwin allocated $1,875,000 in legal fees to himself and $625,000 to the firm Springer, Casey & Dienstag, P.C. Later, in March 2009, plaintiff paid attorney Dienstag a $500,000 fee for the adjudication of the custody issues.

¶ 38        Plaintiff alleged that in April 2009 Matthew and Donald Casey devised a scheme to obtain additional funds from her whereby they convinced her to hire new counsel to help her recoup from Litwin, Dienstag and the firm some of the $3 million she had paid in legal fees. The new counsel achieved a settlement in June 2009, and $1.5 million was returned to plaintiff from Litwin, Dienstag and the firm. Plaintiff alleged that Matthew Casey then "began to pressure [her] for a referral fee in the form of a gift." Matthew said that he and his father enabled plaintiff to recoup $1.5 million in attorney fees and "she would have gotten nothing" without them. Plaintiff further alleged Matthew stated that "he and his father discussed the consequences of any further proceeding within the divorce case should Plaintiff fail to pay the gift" and that "visitation of her children could be affected."

¶ 39        Plaintiff alleged that in July 2009 Matthew's statements had intimidated her into hiring new counsel selected by Matthew and Donald to draft three gift trusts to benefit Donald and Matthew. Donald was the trustee for the trusts and would be compensated for administering the trusts. Plaintiff funded the first trust for the benefit of Donald Casey by writing him a $300,000 check. The other two trusts were designed to be funded by plaintiff with a $300,000 gift to Donald and a $500,000 marital gift to Matthew. Plaintiff alleged Matthew and Donald "continually told [her] to execute and fund [the other] trusts" and "made statements to [her] that it was in her best interests to execute and fund the *** trusts otherwise her visitation under [the joint parenting agreement] would be affected in a negative way." Plaintiff, due to concerns about tax consequences, did not execute the gift trusts but instead wire transferred $400,000 to Matthew and wrote a $300,000 check to Donald. When plaintiff later demanded the return of the funds, Matthew and Donald refused.

¶ 40        Plaintiff's alleged misrepresentations of material fact consist of: (1) Matthew said she should gift some funds to him and his father because they were responsible for the refund of her attorney fees; (2) Matthew said he and Donald discussed the effect of her failure to pay the gift upon any further divorce proceedings and her visitation could be affected; and (3) Matthew and Donald said it was in her best interest to fund the gift trusts or her visitation

would be negatively affected.

¶ 41    Generally, a mere expression of opinion will not support an action for fraud. *Duhl v. Nash Realty, Inc.*, 102 Ill. App. 3d 483, 489 (1981). Sometimes, however, the expression of an opinion may carry with it an implied assertion that the speaker knows facts that justify it, such as when the defendant holds himself out or is understood as having special knowledge of the matter that is not available to the plaintiff. *Power v. Smith*, 337 Ill. App. 3d 827, 832 (2003); see also *Duhl*, 102 Ill. App. 3d at 490 (" 'the ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond, of an attorney upon a point of law, of a physician upon a matter of health, of a banker upon the validity of a signature, or the owner of land at a distance as to its worth' " (quoting William L. Prosser, Torts § 109, at 726-27 (4th ed. 1971))). Furthermore, assurances as to future events are generally not considered misrepresentations of fact. *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 387 (1993).

¶ 42    The exceptions for inactionable opinions are limited to recognized situations, such as where a plaintiff employs a realtor to appraise a house. *Buttitta v. Lawrence*, 346 Ill. 164 (1931); see also *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 705 (2002) (given the defendant bank officers' detailed knowledge of the investors' banking and financial history, the defendants' statements to the plaintiff loan guarantor regarding the financial qualifications of the investors concerning a business venture reasonably supported the inference that the defendants' statements were representations of material fact rather than opinions); but see *Power*, 337 Ill. App. 3d at 832 (a contractor's partner's prediction that a construction job would be profitable did not constitute a statement of material fact).

   " '[T]he general rule is that it is not "the form of the statement which is important or controlling, but the sense in which it is reasonably understood." ' [Citation.] 'Whether a statement is one of fact or of opinion depends on all the facts and circumstances of a particular case.' [Citations.]" *Schrager*, 328 Ill. App. 3d at 704.

¶ 43    Matthew's first alleged statement is an opinion and not actionable. Matthew's second statement, which is also an opinion, cannot be attributed to Donald where plaintiff failed to plead sufficient facts to indicate any agency relationship between Matthew and Donald. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 498-99 (1996). Moreover, plaintiff has not alleged facts indicating that she reasonably relied upon Matthew's statements where she acknowledges that Matthew was not an attorney. In addition, plaintiff's complaint indicates that attorney Dienstag, not Donald Casey, handled the custody portion of her divorce case. Furthermore, the visitation in the joint parenting agreement was established in April 2009, and the history of this case establishes that plaintiff knew by July 2009 that any change concerning visitation would necessitate further legal proceedings or an agreement between her and Robert. This failure to allege facts sufficient to support reasonable reliance also applies to the third type of statements allegedly made by both Matthew and Donald.

¶ 44    Although plaintiff states the conclusion that she was pressured and intimidated by Matthew, she has not alleged facts to suggest grounds for coercion or duress. Furthermore, her pled allegations concerning the trusts and allegations about intimidation are contradicted by an exhibit to her complaint, an August 2009 letter from the counsel plaintiff

independently retained to set up the trusts. According to that letter, plaintiff wanted to make a $300,000 outright gift to Donald Casey. She also wanted to create two gift trusts for Matthew for $700,000 but delay the distribution of the gift to him until after his divorce was final. The letter then details the measures plaintiff's separate counsel took to protect plaintiff's interests in the funds until Matthew's divorce was final or plaintiff and Matthew were married. Plaintiff's utilization of separate counsel in that transaction does not support her conclusory allegations of pressure or intimidation.

¶ 45     Nevertheless, plaintiff asserts that Matthew and Donald's threats to her visitation were statements of fact, not opinions. Whether a statement is one of fact or opinion depends upon the entirety of facts and circumstances under which they were made. The ultimate question of whether the misrepresentation was one of fact is a question of law. *Power*, 337 Ill. App. 3d at 830. Despite its prodigious length, plaintiff's complaint is sparse on relevant facts and thus does not give this court much to analyze concerning the facts and circumstances surrounding Matthew's and Donald's alleged threats to interfere with plaintiff's visitation. However, as discussed above, the pleadings and supporting documents do not provide factual support for an inference that either Matthew or Donald were involved in the custody portion of plaintiff's divorce case or could have affected the already finalized joint parenting agreement. Accordingly, viewing the allegations and exhibits in the light most favorable to plaintiff, we cannot conclude that Matthew's or Donald's alleged statements about gift trusts or visitation could reasonably support the inference that the alleged statements were representations of material fact under the circumstances rather than opinions.

¶ 46     We conclude that plaintiff has not pled specific facts to support the elements of a fraud cause of action in counts III, IV and V of the complaint. She has failed to support the allegations in her pleadings with facts showing that various defendants knowingly made a false statement of material fact or that she relied upon the truth of the statement.

¶ 47                                    C. Civil Conspiracy

¶ 48     The trial court dismissed plaintiff's count VI claim against all defendants alleging conspiracy. The trial court ruled that plaintiff failed to sufficiently allege a civil conspiracy cause of action because she failed to plead any particular facts that showed there was an agreement between the defendants to act in an unlawful manner and an overt tortious act was committed in furtherance of a scheme and damaged plaintiff. We affirm the trial court's ruling.

¶ 49     To state a claim for civil conspiracy, a plaintiff must allege facts establishing: (1) an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by the defendant. *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915, 927 (2010). Because conspiracy is not an independent tort, if "a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails." *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000).

¶ 50     To connect a defendant to a conspiracy, the complaint must allege the "necessary and

important element" of an agreement. (Internal quotation marks omitted.) *Redelmann v. Claire-Sprayway, Inc.*, 375 Ill. App. 3d 912, 924 (2007). A complaint must do more than merely characterize a combination of acts as a conspiracy to survive a motion to dismiss. *Id.* at 923. Moreover, any circumstantial evidence offered to show a conspiracy must be clear and convincing. *Id.* at 924. "There is no such thing as accidental, inadvertent or negligent participation in a conspiracy." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64 (1994). "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Id.*

¶ 51 Plaintiff claimed that an agreement existed to force her to settle the divorce case whereby Robert and his attorneys would drastically undervalue and misrepresent the marital nature of Robert's assets. However, plaintiff alleged merely that her attorneys asked Robert's attorneys to tangibly support Robert's litigation position concerning the division of the marital assets. No specific facts indicated that Robert and his attorneys knew about the alleged conspiracy and agreed to participate in it or that their settlement communications conveyed anything but Robert's *bona fide* litigation position. In addition, Matthew Casey was not an attorney, and plaintiff has failed to plead any facts to support her legal conclusion that he was an agent for her attorneys.

¶ 52 Accordingly, plaintiff did not allege specific facts from which it could necessarily be inferred that Robert and his attorneys knew of and agreed to participate in a fraud perpetrated by plaintiff's attorneys and her ex-fiancé. Without that knowledge and voluntary participation, there was no intent, and without intent there was no claim. Moreover, where the trial court dismissed plaintiff's counts based on fraudulent inducement, it necessarily had to dismiss her conspiracy count based on that alleged fraudulent activity. *Suburban 1, Inc. v. GHS Mortgage, LLC*, 358 Ill. App. 3d 769, 773 (2005) (because a conspiracy claim is founded on a separate claim of wrongdoing, if that separate claim fails then the conspiracy claim fails, collapsing like a "house of cards"). We conclude that the trial court correctly dismissed plaintiff's count VI alleging conspiracy.

¶ 53                                           D. Legal Malpractice

¶ 54 In counts VII through X, plaintiff alleged that her former attorneys, Litwin, Dienstag, Donald Casey, and the firm Springer, Casey & Dienstag, P.C., committed legal malpractice where they breached their duty of care to plaintiff by: "advising [her] to accept and execute the inequitable MSA"; "failing to make a reasonable inquiry into the nature and value of the assets covered by the MSA"; "preparing false documents in support of the MSA"; "advising [her] to accept and execute the inequitable [joint parenting agreement]"; charging [her] excessive and unconscionable legal fees"; and "engaging in self-dealing." Plaintiff alleged that but for defendants' breach of their duties, she would have "recovered an equitable share of the marital estate," not "lost custody of her children," and "discovered the value of [Robert's] assets and their marital nature." Plaintiff also alleged that as a result of defendants' malpractice, she spent millions of dollars in legal fees in the divorce proceedings.

¶ 55 In order to state a cause of action for legal malpractice, plaintiff must allege facts which

establish the existence of an attorney-client relationship, the attorney thus owed the plaintiff a duty, that duty was breached, the plaintiff sustained damages, and the existence of a proximate causal relationship between the breach of duty and the damages sustained. *Fabricare Equipment Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 788 (2002). A plaintiff must allege sufficient facts to support each and every one of these elements to survive a section 2-615 motion to dismiss. *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 918 (2002).

¶ 56    Plaintiff's breach of duty allegations merely state a series of legal conclusions. No allegations of fact support the conclusions that the MSA and joint parenting agreement were inequitable. No allegations with specific facts are made concerning the alleged false documents or self-dealing. The alleged false documents were prepared by Robert's counsel, but plaintiff concludes, without factual support, that somehow her attorneys adopted Robert's trial theories as representations of fact. In addition, plaintiff's conclusions about excessive attorney fees are contrary to the fact, which she acknowledges, that she obtained independent representation and reached a settlement agreement whereby Litwin, Dienstag and his firm refunded 50% of the total legal fees to her.

¶ 57    Furthermore, plaintiff failed to sufficiently plead proximate cause where she did not plead specific facts establishing that she has a meritorious underlying cause of action for greater parental rights than the joint custody she received and greater recovery against Robert than the $18 million cash and over $1 million home tax-free settlement she received, and that she would have recovered that greater claim but for the alleged negligence of her attorneys. A client must allege facts that would establish success in the underlying suit (*Ignarski v. Norbut*, 271 Ill. App. 3d 522 (1995)); merely alleging that the underlying suit was meritorious is not sufficient (*Claire Associates by Livaditis v. Pontikes*, 151 Ill. App. 3d 116 (1986)). Plaintiff's fourth amended complaint is completely devoid of the necessary allegations as to why she was entitled to a larger recovery of the parties' assets and sole custody of the children. She has not pled facts to establish how or why Spot was marital property, the fair market value of Spot at the time of the dissolution of marriage judgment, and which factors–which are left to the discretion of the trial court–weighed in favor of allocating a greater portion of marital property to plaintiff. She has not pled facts to establish why it would have been in the best interests of the minor children to award plaintiff greater parental rights after a trial in the underlying case than the joint custody she received in her negotiated settlement. We conclude that the trial court correctly dismissed plaintiff's counts VII through X alleging legal malpractice.

¶ 58                                    III. CONCLUSION

¶ 59    Because we have determined that plaintiff's fourth amended complaint failed to sufficiently plead causes of action for civil RICO violations, fraud, civil conspiracy and legal malpractice, we affirm the judgment of the circuit court that dismissed, with prejudice, plaintiff's fourth amended complaint pursuant to section 2-615 of the Code.

¶ 60    Affirmed.