2022 IL App (1st) 211390-U

FIFTH DIVISION
AUGUST 12, 2022

No. 1-21-1390

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| HASSAN A. MUHAMMAD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 12457 |
| | ) | |
| PNC BANK, N.A., | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Connors concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's judgment dismissing the plaintiff's complaint is affirmed.

¶ 2     The *pro se* plaintiff-appellant, Hassan Muhammad, filed a complaint in the circuit court of Cook County against the defendant-appellee, PNC Bank (PNC). PNC filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)), which the circuit court granted. Mr. Muhammad now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      On November 23, 2020, Mr. Muhammad filed a *pro se* verified complaint against PNC. The complaint contained the following counts: count I, breach of fiduciary duty; counts III and IV, tortious interference and gross negligence; and counts II, V, and VI, contained fraud allegations. PNC responded with a motion to dismiss the complaint pursuant to section 2-615 of the Code. The trial court granted PNC's motion and dismissed counts III and IV of Mr. Muhammad's complaint with prejudice. However, the trial court dismissed counts I, II, V, and VI of Mr. Muhammad's complaint without prejudice and gave him leave to replead those counts.

¶ 5      On June 2, 2021, Mr. Muhammad filed an amended *pro se* complaint against PNC. The amended complaint alleged that on November 6, 2020, Mr. Muhammad participated in a "Public Surplus auction where the County of Orange[,] Florida was selling" a 2015 Chevrolet pick-up truck "valued between $25,000 and $35,000." Mr. Muhammed was the highest bidder on the truck with a bid of $11,500. The complaint explained that Mr. Muhammad was provided a document indicating that he had won the auction and had five days in which to provide the total payment for the truck in the amount of $13,537.50 to the Orange County Comptroller's Office.

¶ 6      The complaint alleged that on November 6, 2020, Mr. Muhammad "personally went to a [PNC] location in Chicago *** to arrange for the wire transfer of funds to pay" the Orange County Comptroller's Office. Mr. Muhammad "informed agents of [PNC] that he had only five days to cause a payment to be made and received" by the Orange County Comptroller's Office and asked if PNC was able to make such a timely transfer. PNC represented to Mr. Muhammad that it would timely transfer the funds to the Orange County Comptroller's Office within 24 to 48 hours. In relying on that statement, Mr. Muhammad signed "the contractual agreement authorizing [PNC] to transfer the payment of [$]13,537.50 to" the Orange County Comptroller's Office.

¶ 7    The complaint further alleged that on November 9, 2020, Mr. Muhammad called PNC to inquire if the wire transfer was completed. The complaint continued:

> "To [Mr. Muhammad's] surprise, [Mr. Muhammad] was told over the phone, by other agents of [] PNC, that the wire transfer payment was made on November 9, 2020[,] to the Orange County Florida's Comptroller Office.

> While [Mr. Muhammad] was alarmed at the delay[,] agents of [] PNC assured the [Mr. Muhammad] the payment would be paid no later than November 10, 2020.

> [Mr. Muhammad] communicated to and informed Public Auctions and the Orange County Comptroller['s] Office the information conveyed to [him] by [] PNC."

According to Mr. Muhammad in his complaint, he called PNC on November 10, 11, 12, 13, 14, and 15, 2020, to inquire if the wire transfer was completed. On each of those dates, PNC told Mr. Muhammad that the payment had been made to the Orange County Comptroller's Office. And on each date, the Orange County Comptroller's Office informed Mr. Muhammad that they had not yet received the payment.

¶ 8    The complaint continued that on November 16, 2020, Mr. Muhammad called PNC to inquire about the wire transfer, and spoke to a PNC agent, Grace O'Connor. Ms. O'Connor "said the Orange County Comptroller['s] Office had rejected the payment." Mr. Muhammad then called the Orange County Comptroller's Office, who told him that "they had not received the payment and did not reject the payment." He again called PNC that same day, and Ms. O'Connor informed him that "PNC would now send the payment."

¶ 9    The complaint stated that PNC completed the wire transfer in the amount of $13,537.50 on

November 17, 2020. However, that same day, the "public auction again informed [Mr. Muhammad] that they considered [him] in default due to the failure to pay." The truck was then sold to the next highest bidder. When Mr. Muhammad subsequently called PNC about the wire transfer, they told him that the $13,537.50 had been placed back into his bank account, but "there was nothing else they intended to do about the matter."

¶ 10    Mr. Muhammad's complaint alleged that PNC's failure to complete the wire transfer within 48 hours was a breach of contract and an act of negligence, and that throughout the process PNC made false statements regarding the status of the wire transfer. He alleged that, as a result, he lost the truck, and has not been able to find another truck of the same model for less than $25,000. He asserted that he suffered a loss in the amount of $35,000 (the truck's value), as well as a loss of $5,000 "of earned income because [he] was unable to accept work assignments because [PNC] forced him to dedicate the time to prosecute this lawsuit." The complaint contained the following counts against PNC: count I, breach of contract; count II, fraudulent representation; count III, fraudulent concealment; count IV, negligence; count V, declaratory judgment; count VI, bad faith claim; and count VII, gross negligence. The complaint sought compensatory and punitive damages.

¶ 11    In response to the amended complaint, PNC again filed a motion to dismiss pursuant to section 2-615 of the Code. The motion to dismiss argued that the contract and declaratory judgment claims failed under the express terms of the parties' contract, which limited Mr. Muhammad's potential recovery against PNC to the amount of the wire transfer funds, and Mr. Muhammad conceded that his wire transfer funds had already been refunded. PNC argued that the fraud claims failed also, because "they are predicated on promises for future conduct, which are not actionable" and also did not satisfy Illinois' heightened pleading standard. Regarding the negligence claims,

PNC asserted that those counts "are identical to those previously dismissed with prejudice." And finally, PNC pointed out that there is no "bad faith" action in Illinois. It therefore argued:

> "At bottom, this is a contract action. [Mr. Muhammad's] claims each hinge on his assertion that PNC was obligated to transfer the funds at issue and failed to timely do so. PNC's obligations to [Mr. Muhammad] are governed by a written agreement. That written agreement's express terms defeat each claim asserted in the Amended Complaint. [Mr. Muhammad] was afforded an opportunity to cure his prior pleading defects, and wholly fails to do so. Dismissal with prejudice is appropriate at this time."

Attached to the motion to dismiss was the written agreement regarding the wire transfer (the agreement) between Mr. Muhammad and PNC. The terms and conditions of the agreement, which was drafted by PNC, provided, in relevant part:

> "In the event this payment order is not executed by us for any reason, we will refund to you the U.S. dollar amount of this payment order, less all of our wire and other costs and expenses associated with this payment order. Except for the payment of such refund, we shall not be liable to you for any loss or damage which you may suffer or incur by reason of this payment order not being executed by us."

¶ 12    The trial court heard arguments from the parties on PNC's motion to dismiss. On October 28, 2021, the trial court issued a written order granting PNC's motion and dismissing Mr. Muhammad's entire amended complaint with prejudice. In so ruling, the court analyzed each count contained in the complaint. Regarding the negligence claims (counts IV and VII), the trial court noted that those counts were dismissed with prejudice in the court's previous order and that Mr. Muhammad had since withdrawn those counts.

¶ 13    Turning to the breach of contract claim (count I), the trial court stated that Mr. Muhammad had failed to identify a provision in the agreement which PNC breached or to allege facts establishing any recoverable damages. The trial court stated:

> "[Mr. Muhammad] alleges that PNC breached the Agreement by failing to transfer $13,537.50 on November 6, 2020. Yet, the Agreement expressly provides for this contingency, setting forth PNC's obligation to [Mr. Muhammad] in the event the transfer of funds is not executed. Specifically, the Agreement provides 'in the even[t] this payment order is not executed by [PNC] for any reason, [PNC] will refund you the U.S. dollar amount of this payment order, [and] shall not be liable to you for any loss or damage which you may suffer or incur by reason of this payment order not being executed by [PNC].'
>
> Here, [Mr. Muhammad] admits PNC returned the $13,537.50 to [his] bank account. As such, by the express terms of the parties' Agreement, [Mr. Muhammad] has already recovered all that he was owed, and the Agreement does not provide for further recovery. Additionally, even if the court found that [Mr. Muhammad] sufficiently pled a breach of contract claim, the contract limits damages and excludes all other damages that [Mr. Muhammad] is seeking."

¶ 14    In addressing the fraud claims (counts II and III), the trial court found that Mr. Muhammad had failed to satisfy the heightened pleading standard for fraud. The court explained that Mr. Muhammad's fraud allegations did not identify any specific misrepresentation of fact by PNC, but instead involved statements of future events. The trial court further found that Mr. Muhammad's fraud claims were "attempts to recast a breach of contract claim."

¶ 15    Finally, the trial court held that Mr. Muhammad's claims for declaratory relief (count V)

and bad faith (count VI) also failed because "there is no justifiable controversy to support [a] claim for declaratory relief" and "there is not [an] independent cause of action for bad faith under Illinois law."

¶ 16    The trial court therefore dismissed all of the counts in the amended complaint with prejudice, noting that its order was a final order disposing of the matter in its entirety. Mr. Muhammad filed a notice of appeal the same day.

¶ 17                                    ANALYSIS

¶ 18    We note that we have jurisdiction to consider this matter, as Mr. Muhammad filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 19    Mr. Muhammad presents the following issue on appeal: whether the trial court erred in granting PNC's motion to dismiss and dismissing his amended complaint. Mr. Muhammad argues that the trial court erred in dismissing his breach of contract and fraud claims.[1] Specifically, he asserts that he alleged sufficient facts to demonstrate a breach of contract claim because the contingency provision in the agreement only applies when PNC *cancels* a wire transfer, whereas he alleged that PNC completed his wire transfer but did so in an untimely manner. And he asserts that he alleged sufficient facts to demonstrate fraud by pleading that PNC represented to him that the wire transfer would be complete within 48 hours, inducing him to release the money, and then continuing to tell him that the wire transfer had been completed, even though PNC "well knew that [it] had not made the wire transfer ***".[2] He stresses that in addition to causing him to lose

---

[1] Mr. Muhammad does not argue that the trial court erred in dismissing the other claims contained in his amended complaint.

[2] For the first time, on appeal, Mr. Muhammad also argues that he pled sufficient facts to state a claim under the Consumer Fraud Act. As this is the first time he raises this argument (his complaint only alleged common law fraud), he has forfeited the argument and we will not consider it. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 (arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal).

the truck he won in the auction, PNC also failed to return the cost Mr. Muhammad paid to have the money transferred. He accordingly asks us to reverse the trial court's judgment.

¶ 20    "A motion to dismiss brought pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint by alleging defects on its face." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 735 (2009). While a plaintiff is not required to prove his case in the pleading stage, he must allege sufficient facts to state all the elements which are necessary to sustain his cause of action. *Visvardis v. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007). A trial court should dismiss a complaint under section 2-615 only if it is readily apparent from the pleadings that there is no possible set of facts that would entitle the plaintiff to the requested relief. *Quinn v. Board of Education of the City of Chicago*, 2018 IL App (1st) 170834, ¶ 57. "The question for the court is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff[], are sufficient to establish the cause of action." *Id.* We review *de novo* the trial court's dismissal of a complaint pursuant to section 2-615. *Wagner*, 391 Ill. App. 3d at 735.

¶ 21    Reviewing Mr. Muhammad's amended complaint on its face, it is clear that all of his claims are insufficient to state a cause of action. First, looking at his breach of contract claim, it is indisputable that the parties' transaction was controlled by the agreement. Mr. Muhammad's breach of contract claim is based upon his argument that PNC failed to complete the wire transfer to Orange County Comptroller's Office within 48 hours pursuant to the agreement. As an initial matter, we note that, while the agreement states that PNC would send the wire transfer on November 6, 2020, nothing in the agreement provides that the wire transfer would be completed within 48 hours, contrary to Mr. Muhammad's assertion.

¶ 22    Notwithstanding, the agreement explicitly states that, in the event the payment order "is not executed by [PNC] for any reason," PNC will refund the dollar amount of the payment order,

"less all of [the] wire and other costs and expenses associated with this payment order." Importantly, the agreement further provides that: "Except for the payment of such refund, [PNC] shall not be liable *** for any loss or damage which [may] incur by reason of this payment order not being executed by [PNC]."

¶ 23    Pursuant to this contingency provision of the agreement, there is no possible relief for Mr. Muhammad's contract claim, as PNC refunded him the wire payment amount of $13,537.50, which is the only possible relief pursuant to the agreement. The agreement, which Mr. Muhammad based his claim upon, specifically prohibits him from being entitled to any additional damages, such as the damages sought in his complaint. In other words, the contingency provision in the agreement prevents Mr. Muhammad's breach of contract claim. Thus, taking Mr. Muhammad's pleadings as true, as we must, there are no possible set of facts by which he would be entitled to relief. While we may empathize with Mr. Muhammad for what was certainly a disappointing outcome for him, through no fault of his own, the contract which governs the relief he seeks makes no provision for empathy or what may seem to be unfair treatment by PNC, *post facto*. As such, Mr. Muhammad failed to plead a cause of action for breach of contract in order to survive PNC's motion to dismiss. *Beauchamp v. Dart*, 2022 IL App (1st) 210091, ¶ 8 (a plaintiff is required to have pled facts that are sufficient to state a claim *on which relief can be granted* to survive a motion to dismiss). The trial court therefore properly dismissed the breach of contract claim. See *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 586 (2005) (the complaint should be dismissed if it is clearly apparent that the plaintiff could prove no set of facts that would entitle them to relief).

¶ 24    We are mindful of Mr. Muhammad's argument that the contingency provision of the agreement only applies if PNC *cancels* the wire transfer, whereas here, PNC *did* complete the wire

transmit, but did so in an untimely manner. He claims that, consequently, the contingency provision does not apply to this case. We are not persuaded by this argument. The contingency provision simply states that if PNC *does not execute* the wire transfer for *any reason*, the payment amount will be refunded. The facts, as pled in Mr. Muhammad's complaint, are that PNC did not execute the wire transfer, as the Orange County Comptroller's Office eventually informed Mr. Muhammad that it "considered [him] in default due to the failure to pay." These allegations, on their face, fit squarely within the contingency provision. Nothing else in the pleadings leads us to infer that the contingency provision in the agreement is inapplicable here. See *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009) (in ruling on a 2-615 motion to dismiss, only those facts apparent from the face of the pleadings, taken as true, and reasonable inferences drawn therefrom, are considered).

¶ 25    Turning to Mr. Muhammad's fraud claims; to sufficiently plead fraud, which has a higher standard of specificity, a plaintiff must allege that the defendant made a representation of material fact, the defendant knew or believed the representation was untrue, the plaintiff had a right to and did rely on the representation, the representation was made for the purpose of inducing the plaintiff to act or refrain from acting, and the representation led to the plaintiff's injury. *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 803-04 (2005). Looking at Mr. Muhammad's fraud allegations in the amended complaint, he did plead these basic elements:

> "[] PNC['s] statements and assertions, repeated over eleven (11) days, that [they] had, in fact, transferred [Mr. Muhammad's] money within 24 to 48 hours, when in fact the money was not transferred, were false statements.
>
> [] PNC well knew their statements made to [Mr. Muhammad], that his money was wired and transmitted, were false statements.

>       [] PNC['s] statements and assertions, repeated over eleven (11) days were
>       made with the intent to induce [Mr. Muhammad] to continue with his wire transfer
>       actions using [] PNC.
>
>       [] That [Mr. Muhammad] relied on the truth of the statements and assertion
>       made by agents of [] PNC and did not use an alternative method to cause payment
>       to be made to Public Auction and/or the Orange County Florida's Comptroller
>       Office."

¶ 26     However, those allegations lack any specificity as required by the high standard for pleading fraud. There must be *specific allegations of facts*, from which fraud is the necessary or probable inference. *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 15. Such allegations should specify which misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. *Id.* Without such specificity, Mr. Muhammad's pleadings are vague and do not amount to a cause of action for fraud. See *Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 1085 (1998) (facts alleging fraud must be pleaded with sufficient specificity, particularity, and certainty to apprise the opposing party of what they are called upon to answer). This is true for both of his fraud claims (fraudulent representation and fraudulent concealment). In fact, we agree with the trial court that Mr. Muhammad's fraud claims were merely an attempt to recast his breach of contract claim. The trial court therefore did not err in dismissing Mr. Muhammad's fraud claims. *Calloway v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 191603, ¶ 21 (a complaint will not survive a motion to dismiss if it consists only of conclusory or speculative allegations).

¶ 27     Thus, Mr. Muhammad's amended complaint failed to state a cause of action and so the trial court properly granted PNC's section 2-615 motion to dismiss on that basis. We affirm the trial

court's judgment dismissing Mr. Muhammad's amended complaint with prejudice.

¶ 28                                CONCLUSION

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30    Affirmed.